IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISABEL GONZALEZ,

    **Plaintiff,**

vs().                                    Civil Action No. B-02-181

FRANK DE LA GRANA, and
LAW OFFICES OF FRANK
DE LA GRANA,

    **Defendants.**
_____/

**DEFENDANTS' MOTION TO DISMISS OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

The Defendants, **FRANK DE LA GRANA, and LAW OFFICES OF FRANK DE LA GRANA**, by and through undersigned counsel, move this Honorable Court to dismiss this action, with prejudice, pursuant to Rule 12, Fed. R. Civ. P., and Rule 56, Fed. R. Civ. P.

Defendants contend that Plaintiff's Complaint is a classic example of a "shotgun pleading." See **Pelletier v. Zweifel**, 921 F.2d 1465, 1518 (11th Cir.), reh'g denied, 931 F.2d 901 (11th Cir.), cert. denied, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Plaintiff has framed the Complaint in such a way that it is practically impossible to determine which allegations bear true relevance to which counts, and, moreover, precisely what Defendants did to give Plaintiff any right of action. Having said that, Defendants state the following:

    I.    **LACK OF JURISDICTION OVER THE SUBJECT MATTER**

Defendants contend that this Court lacks jurisdiction over the subject matter and submits that there is no affirmative showing by competent evidence that Defendants are within the

Court's jurisdiction. In the typical diversity case, plaintiff files suit in federal court against a diverse party for damages exceeding $75,000. Such a case should be dismissed where it appears to a legal certainty that plaintiff's claim is actually for less than the jurisdictional amount. Here, the Complaint alleges in general that Plaintiff entered into a contract[1] with Defendants for legal representation in a federal prosecution and that $10,000 was delivered to De La Grana as payment for said representation. The Complaint alleges that Defendants breached the contract in that they failed to provide the said legal representation and that as a result, Plaintiff suffered actual damages in the amount of $10,000. Additionally, Plaintiff is seeking $250,000 in compensatory damages for emotional distress and mental trauma, and $750,000. in punitive damages. Plaintiff has not stated what, if any, emotional distress and mental trauma he has suffered or what rule of law would entitled him to compensation for emotional distress and mental trauma. Moreover, Plaintiff has not stated what rule of law would entitle him to punitive damages. Defendants aver that Plaintiff's claims for compensatory and punitive damages are not made in good faith, but are made only to satisfy the jurisdictional amount necessary to establish jurisdiction. In Texas, this case falls into the category of a suit for breach of contract, for which the proper redress is money judgment for actual damages, for which punitive damages are not authorized. **Graham v. Turner**, 472 S.W.2d 831, 838 (Tex.Civ.App. 1971). Defendants argue that it is apparent, to a legal certainty, that Plaintiff cannot recover the amount claimed and that Plaintiff's claim is actually for less than the jurisdictional amount. Since the economic loss Plaintiff has alleged is insufficient to establish the statute's $75,000 jurisdictional amount, the

---

[1] Although the Complaint alleges that Plaintiff entered into a contract with Defendants, there is no written contract attached to the Complaint.

2

Court lacks subject matter jurisdiction and should therefore dismiss the case. Additionally, where a plaintiff files a case in the federal court and is adjudged to be entitled to recover less than the sum or value of $75,000, the Court may impose costs on the plaintiff. See 28 U.S.C. § 1332(b).

## II.   LACK OF JURISDICTION OVER THE PERSON

Defendants contends that the contract, if any, was not initiated or consummated in the State of Texas. Moreover, the Complaint clearly indicates that Defendants did not do business in the State of Texas or enter into a contract to be performed in whole or in part by either party in Texas, or commit any tort in whole or in part in Texas.

The power of a federal court entertaining a suit based on diversity of citizenship to exercise jurisdiction over the persons of non-resident defendants turns on two independent considerations. The law of the state in which the federal court sits must confer jurisdiction over the persons of the defendants, and if it does, the exercise of jurisdiction under state law must comport with basic due process requirements of the United States Constitution. **Jetco Electronic Industries, Inc. v. Gardiner**, 473 F.2d 1228, 1232 (5th Cir. 1973); **Atwood Hatcheries v. Heisdorf & Nelson Farms**, 357 F.2d 847, 852 (5th Cir. 1966).

It is well-settled that the party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists, and the burden may not be shifted to the party challenging the jurisdiction. **Jetco Electronic Industries**, supra, 473 F.2d at 1232; **Benjamin v. Western Boat Building Corp.**, 472 F.2d 723, 731 (5th Cir. 1973); **Owen of Georgia, Inc. v. Blitman**, 462 F.2d 603 (5th Cir. 1972); **Frito Lay, Inc. v. Procter & Gamble Co.**, 364 F.Supp. 243, 250 (N.D.Tex. 1973); **Bland v. Kentucky Fried Chicken Corp.**, 338 F.Supp. 871, 875

(S.D.Tex. 1971).

When a plaintiff is seeking to bring a defendant into court under a long-arm statute, he must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. The Texas Long-Arm Statute provides that a nonresident defendant who engages in business in the State is amenable to process in any action, suit or proceedings arising out of such business done in the State. Section four of the Statute defines doing business: For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State. In determining whether the statutory requirements for jurisdiction have been met, the place or time of execution, consummation, or delivery is irrelevant-- performance, contemplated or accomplished, is the touchstone. **Atwood Hatcheries**, supra, 357 F.2d at 852 n. 14. And it does not matter which party is to perform in Texas so long as some performance is to occur there. **Clark Advertising Agency, Inc. v. Tice**, 331 F.Supp. 1058, 1060 (N.D.Tex. 1971).

Here, the Complaint alleges in pertinent part that Plaintiff was arrested in Villa, Texas and contacted Defendants in order to secure representation on criminal charges pending against him in the State of North Carolina. See Complaint, ¶¶ 10-11. The Complaint further alleges that Defendants agreed to provide representation in North Carolina. See Complaint, ¶ 13. Defendants submit that the Complaint clearly indicates on its face that Defendants did not enter into a contract with a resident of Texas to be performed in whole or in part by either party in this

4

State, or commit any tort in whole or in part in this State. The Complaint alleges that the Plaintiff entered into a contract with Defendants, performance of which was to be accomplished in the State of North Carolina, not Texas. Accordingly, the Plaintiff has failed to state sufficient facts in the Complaint to support a reasonable inference that the Defendants can be subjected to jurisdiction within this State.

Moreover, a second test must also be satisfied if a court's exercise of personal jurisdiction over a nonresident defendant is to be consistent with due process. Simply stated, it must be fair and reasonable to require the nonresident to defend the suit in the forum. This test requires consideration of such things as the relative conveniences and inconveniences to the parties, and basic equities. In other words, there must be a rational nexus between this lawsuit and a Texas forum. The factors associated with the doctrine of forum non conveniens are relevant.

Additionally, Florida's corporation statutes allow an individual to create a shield against personal liability by forming a professional association. See § 621.05, Fla. Stat. (1993). One or more individuals, professional corporations, or professional limited liability companies, in any combination, duly licensed or otherwise legally authorized to render the same professional services may organize and become a shareholder or shareholders of a professional corporation for pecuniary profit under the provisions of chapter 607 for the sole and specific purpose of rendering the same and specific professional service. The Association is recognized in law as a legal corporate entity separate and distinct from the persons comprising it. **American States Ins. Co. v. Kelley**, 446 So.2d 1085 (Fla. 4th DCA), review denied, 456 So.2d 1181 (Fla. 1984). When a corporate entity is sued, the courts will not look behind that entity to hold liable the individuals who compose it. See **Aztec Motel, Inc. v. State ex rel. Faircloth**, 251 So.2d 849

(Fla. 1971). Defendant Frank De La Grana has formed a professional association, which is recognized in law as a legal corporate entity separate and distinct from the persons comprising it. Accordingly, this Court should issue an order dismissing with prejudice Defendant Frank De La Grana as a party defendant in this suit.

### III. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Complaint does not allege sufficient ultimate facts to state a cause of action. It is well settled that a complaint should be dismissed if it does not support a cause of action on any ground. Dismissal of a complaint with prejudice should be granted when the pleader has failed to state a cause of action and it conclusively appears that there is no possible way to amend the complaint in order to state a cause of action.

#### A. Breach of Contract (First Claim)

The Complaint contains no allegation of fact showing any legal right which belonged to Plaintiff and which the Defendants breached, with damages resulting therefrom. Under the most liberal interpretation of the Federal Rules of Civil Procedure, the Plaintiff has failed to allege a cause of action. However, even assuming a cause of action once existed and was properly alleged, the Plaintiff waited more that two years to bring his action. Texas law provides a two-year statute of limitations on contracts. Tex.Rev.Civ.Code Ann.Tit. 91, s 5526.

Additionally, whether a claim is phrased in terms of contract or tort the result must be the same-in order to state a cause of action under the contract portion of the statute, Plaintiff must present prima facie evidence that a contract to be performed in whole or in part within Texas existed between himself and the Defendants. Here, the Complaint does not allege that a contract

to be performed in hole or in part within Texas existed. When a contract is made in one state to be performed in another, the place of performance governs. **Castilleja v. Camero**, 414 S.W.2d 424 (Tex. 1967).

### B. Intentional Infliction of Emotional Distress (Second Claim)

This is a Texas diversity case, and in Texas a finding of proximate cause is an additional prerequisite to tort liability. For a defendant's actions to be deemed the proximate cause of a plaintiff's emotional injury, two elements must be established: that the conduct was a cause in fact of the injury and that it was reasonably foreseeable to the defendant that injuries to the plaintiff's nervous system would be a natural and probable consequence of the conduct. **Kaufman v. Miller**, 414 S.W.2d 164, 167 (Tex.1967). In its opinion the **Kaufman** court observed that "(r)ecovery is also generally denied when the plaintiff is unusually or peculiarly susceptible to emotional trauma and that fact is unknown to the negligent tortfeasor." Id. at 169. Generally, **Kaufman** stands for the proposition of denying recovery for intentionally or negligently inflicted emotional distress or other psychological injury not springing from some physical injury also inflicted in the same tortious conduct. In such cases, the courts have traditionally been reluctant to impose liability. Under the law of Texas, and particularly **Kaufman**, and the restatement of Torts, Section 436(a), if the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

### C. Civil RICO (Third Claim)

Plaintiff has not alleged sufficient evidence of the existence of a "pattern of racketeering

activity." As to the allegations, Plaintiff alleges nothing more than a single, uncomplicated episode of wrongdoing in the nature of an act of extortion, and a single act cannot constitute a "pattern." Additionally, even if Plaintiff has met the burden of pleading and has alleged sufficient evidence concerning the existence of a pattern of racketeering activity, he has failed to meet his burden with respect to the other elements required under § 1962(a), (b), or (c).

### 1.      The Pattern of Racketeering Activity

A "pattern of racketeering activity," for purposes of the RICO Act, "requires at least two acts of racketeering activity," 18 U.S.C.A. § 1961(5), and the Supreme Court has observed that "two isolated acts of racketeering activity do not constitute a pattern." **Sedima, S.P.R.L. v. Imrex Co.**, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Instead, " '[i]t is the factor of continuity plus relationship which combines to produce a pattern.' " Id. (quoting S.Rep. No. 91-617, 91st Cong., 1st Sess. 158 (1969) (emphasis added)). The Court has expanded on the definition of "continuity" and "relationship." Borrowing from Title X of the Organized Crime Control Act of 1970, the Court has explained that predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." **H.J. Inc. v. Northwestern Bell Tel. Co.**, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (quoting 18 U.S.C. § 3575(e)). As for 'continuity,' the Court explained:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. See Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept--and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the

8

> relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement....

Id. at 241-42, 109 S.Ct. at 2902.

### 2. The Other Requirements of § 1962

Plaintiff has failed to allege or show that the alleged "extortion" caused injury to the plaintiff. Plaintiff has not alleged that Defendants obtained concessions as a result of the alleged extortion. It is well-established that RICO plaintiffs must prove proximate causation in order to recover. **Holmes v. Securities Investor Protection Corp.**, 503 U.S. 258, 112 S.Ct. 1311, 1317-18, 117 L.Ed.2d 532 (1992); see also **Reverend Father O'Malley v. Reverend Father O'Neill**, 887 F.2d 1557, 1561 (11th Cir. 1989). In other words, "[c]ausation principles generally applicable to tort liability must be considered applicable" in RICO cases. **Brandenburg v. Seidel**, 859 F.2d 1179, 1189 (4th Cir. 1988).

RICO makes it unlawful "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise [that affects interstate commerce] through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The "pattern of racketeering activity" element requires that a civil RICO plaintiff establish "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Congress has defined "racketeering activity" to mean the violation of any of the criminal statutes listed in § 1961(1). Section 1961 requires that a RICO plaintiff establish that a defendant could be convicted for violating any of its predicate statutes. **Sedima, S.P.R.L. v. Imrex Co., Inc.**, 473 U.S. at 486-88, 105 S.Ct. at 3280; 18 U.S.C. § 1961 (defining racketeering activity to include

conduct that is "chargeable" or "indictable" and "offenses" that are "punishable" under various criminal statutes). Therefore, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. See **Central Distributors of Beer, Inc. v. Conn.**, 5 F.3d 181, 183-84 (6th Cir. 1993) (affirming grant of summary judgment), cert. denied, 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994). Defendants argue that Plaintiff's RICO claim against them must fail because it does not allege the required element of scienter for any of the predicate acts alleged in the Complaint.

Plaintiff's allegations of scienter cannot be "merely conclusory and unsupported by any factual allegations." **O'Malley v. O'Neill**, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissing RICO conspiracy claim), cert. denied, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); **Beck v. Manufacturers Hanover Trust Co.**, 820 F.2d 46, 50 (2d Cir. 1987) (RICO plaintiffs must "provide some factual basis for conclusory allegations of intent"), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

Under 18 U.S.C. § 1951(a) (2000), extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2). In this case, the Complaint alleges that "De La Grana's extortionate means to secure further funds from the plaintiff and actions in carrying out the threats in failing to perform a legally required duty and withdrawing from representation without following established rules and regulations constitute acts in furtherance of a racketeering claim and constitute a pattern of racketeering as defined in Title 18, United States Code, § 1962 to 1965." See Complaint, ¶ 45. Defendants submit that a threat to withdraw from representation if legal fees are not paid, are not "wrongful" within the meaning of the Act.

10

See **Vemco, Inc. v. Camardella**, 23 F.3d 129, 134 (6th Cir. 1994) (threat to file a lawsuit, even if made in bad faith, is not "wrongful" within the meaning of the Hobbs Act).

To commit extortion, a person's actions must, in some sense, be "wrongful." See 18 U.S.C. § 1951(a) (2000). In **United States v. Enmons**, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), the Supreme Court interpreted "wrongful," within the meaning of the Hobbs Act, to consist of using a wrongful means to achieve a wrongful objective. See id. at 399-400, 93 S.Ct. at 1009. To show a wrongful objective, the Plaintiff must allege and show that Defendants had no lawful claim to the money they sought. See id. at 400, 93 S.Ct. at 1009-10; **United States v. Nell**, 570 F.2d 1251, 1258 (5th Cir. 1978). The Complaint alleges that Defendants used extortionate means to secure further funds from Plaintiff. The Complaint does not allege that Defendants actually received the "further funds." The allegations, if true, do not show that Defendants had no lawful claim to the "further funds." The wrongful-objective element of extortion is therefore not satisfied. See **United States v. Pendergraft**, 297 F.3d 1198, 1205 (11th Cir. 2002).

### D.   Legal Malpractice (Fourth Claim)

The complaint fails to allege sufficient ultimate facts to state a cause of action for legal malpractice. It is necessary in the setting of a legal malpractice case to plead more than the naked legal conclusion that the defendant was negligent. The complaint does not allege what Defendants may have done wrong in their efforts to litigate Plaintiff's case, and does not illuminate any of the specifics of the alleged malpractice. The allegation that "De La Grana breached his duty to the plaintiff by withdrawing from representing him without leave of court" is an insufficient legal conclusion, and not an ultimate fact. See Complaint, ¶ 25.

11

A malpractice action occurs when it is reasonably clear that the client has actually suffered some damage from legal advice or services. Here, Plaintiff has not alleged that he has suffered any damage from legal advice or services. There is no allegation of concrete injury as a result of legal malpractice. Under the law, a cause of action for legal malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client. The third element of a legal malpractice claim, that the attorney's negligence be the proximate cause of loss to the client, is also referred to as the concept of redressable harm. Here, Plaintiff has failed to allege a redressable harm.

Plaintiff has not alleged that he would have prevailed in the original litigation but for any negligence of Defendants. In the context of a legal malpractice action, the burden becomes one of showing that the judgment taken against the plaintiff resulted directly from the acts and omissions of the defendant. A "might have" standard would lead to speculation and conjecture. It is not enough that Plaintiff establishes a breach of the duty owed by the lawyer; Plaintiff must also demonstrate damage which resulted from the breach of the duty. In a legal malpractice case, the presumption is that the legal services were performed in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by substantial competent evidence, otherwise, the grant of summary judgment in favor of the attorney is proper. **Johnson v. Butcher**, 165 Ga.App. 469, 301 S.E.2d 665, 666-67 (1983). **Hughes v. Malone**, 146 Ga.App. 341, 247 S.E.2d 107, 113 (1978).

Even when framed as an action for breach of contract, a malpractice claim against an attorney is barred, under Texas law, by a two-year statute of limitations. Plaintiff's action for

legal malpractice is governed by the two-year limitation of Tex.Rev.Stat.Ann. art. 5526. In applying this statute to malpractice cases, the Texas Supreme Court has held that the two-year period commences after the wrongful act of the defendant results in legal injury to the plaintiff. **Atkins v. Crosland**, 417 S.W.2d 150 (Tex. 1967). Malpractice actions against attorneys, sound in tort under Texas law regardless of how a plaintiff may frame his complaint. Only the two-year limitation of section 5526 is applicable. **Citizens State Bank of Dickinson v. Shapiro**, 575 S.W.2d 375 (Tex.Civ.App. 1978). Here, Plaintiff has not even alleged a legal injury much less a time or date when the legal injury allegedly occurred.

### E. Negligence and Breach of Fiduciary Duty (Fifth Claim)

Without evidence of personal injury or property damage, a plaintiff cannot raise tort claims to recover solely for economic damages flowing from a breach of contract unless the evidence establishes a tort which is distinguishable from or independent of the breach of contract. Contract principles are more appropriate than tort principles for resolving economic losses resulting from the purchase of a product or services where there are no personal injury or property damage claims. **East River Steamship Corp. v. Transamerica Delaval, Inc.**, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). There must be a tort distinguishable from or independent of the breach of contract. Here, Plaintiff has not alleged a tort independent of the breach itself. Consequently, there is no basis for recovery in negligence or breach of fiduciary duty. A breach of contract, alone, cannot constitute a cause of action in tort.

### CONCLUSION

There is no affirmative showing by competent evidence that Defendants are within the Court's jurisdiction. Therefore, this Court lacks jurisdiction over the subject matter.

The Complaint alleges that the Plaintiff entered into a contract with Defendants, performance of which was to be accomplished in the State of North Carolina, not Texas. Therefore, the Plaintiff has failed to state sufficient facts in the Complaint to support a reasonable inference that the Defendants can be subjected to personal jurisdiction within this State.

The Complaint does not allege sufficient ultimate facts to state a cause of action. Based on the foregoing, Plaintiff has failed to state a cause of action and it conclusively appears that there is no possible way to amend the complaint in order to state a cause of action. Therefore, the complaint should be dismissed, with prejudice.

There are compelling reasons for immediately dismissing frivolous actions by prisoners. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful, and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." **Cruz v. Beto**, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting). Such prison recreation imposes significant costs on the judicial system and the general public. Frivolous suits unduly burden the courts, obscure meritorious claims, and require innocent parties to expend significant resources in their defense. Finally, meritless actions offer inmates an unrestricted method of harassing innocent parties.

The Defendants submit that there is a complete absence of a justiciable issues of fact or law raised by the Complaint and contend that under these facts and the law, the Court should award a reasonable attorney's fee and costs to be paid to Defendants for having to defend against this frivolous complaint. Accordingly, the Defendants move the Court for an award of attorney's fees and costs.

**WHEREFORE**, the Defendants move this Honorable Court to dismiss the Complaint, with prejudice, and award the Defendants a reasonable attorney's fee and costs.

Respectfully submitted,

_____
ROBERT HERCE, Esquire
Herce & Herce, P.A.
1710 East 7th Avenue
Tampa, Florida 33605
(813) 248-0704
Fla. Bar No. 275743

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion to dismiss has been furnished by regular U.S. Mail to Isabael Gonzalez, Reg. No. 94143-079, P.O. Box 26040, Beaumont, Texas, 77720, on this __18__ day of November, 2002.

_____
ROBERT HERCE, Esquire